UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23966-Civil-LENARD

ANTONIO GUERRERO,
       Plaintiff,

v.

UNITED STATES,
       Defendant
_____/

UNITED STATES' RESPONSE IN OPPOSITION
TO ANTONIO GUERRERO'S MOTION UNDER 28 U.S.C. §2255
TO VACATE, SET ASIDE OR CORRECT SENTENCE

Through counsel, Antonio Guerrero ("Movant") has moved to vacate, set aside or correct his sentence in Case No. 98-721-Cr-LENARD(s)(s), pursuant to 28 U.S.C. §2255. He makes essentially two claims: that payments to local journalists from the Broadcasting Board of Governors ("BBG") amount to a fatal due-process violation; and that government-suppressed evidence entitles Movant to a new trial. Both claims lack merit. The claims concerning journalists do not amount to a due-process violation, and Movant additionally fails to show any prejudice arising from the facts alleged.  The claims of non-disclosure of evidence are procedurally defaulted. Substantively, they are utterly without support, and Movant fails to describe, let alone document, what supposedly non-disclosed evidence he is referring to.  His request for an evidentiary hearing and for discovery also are not merited. The United States respectfully submits that the Motion should be denied.

Movant was charged, with 13 others, in a second superseding indictment, in the underlying criminal case. *See* DE/cr224.[1] Five pled guilty; four have never been arrested; and Movant proceeded to a seven-month jury trial with the remaining four defendants. Movant was convicted on all counts for which he was charged: Count One, conspiracy to act as an agent of a foreign government (the Republic of Cuba) without prior notification to the Attorney General as required, and to defraud the United States of and concerning governmental functions and rights, in violation of 18 U.S.C. §371; Count Two, conspiracy to commit espionage, in violation of 18 U.S.C. §794(c); and Count 16, acting an agent of a foreign government (the Republic of Cuba) without prior notification to the Attorney General as required. Following lengthy appeals, Movant was convicted on all counts, with a remand for resentencing. *See United States v. Campa, et al*, 419 F.3d 1219 (11th Cir.), [*"Campa 1"*], *vacated* 429 F.3d 1011 (11th Cir. 2005) (*en banc)*; *United States v. Campa, et al*, 459 F.3d 1121 (11th Cir. 2006)(*en banc*) [*"Campa 2"*]; *United States v. Campa, et al*, 529 F.3d 980 (11th Cir. 2008) [*"Campa 3"*], *cert. denied*, 129 S.Ct. 2790 (2009). The court resentenced him to 262 months incarceration, followed by five years supervised release. DE/cr1762. Movant did not appeal the resentencing.

Movant's Motion, DE1,[2] is modeled after a voluminous and detailed §2255 motion filed by Gerardo Hernandez ("Hernandez"), Movant's co-defendant from the underlying criminal case. Hernandez's §2255 motion is Case No. 10-cv-21957-JAL. The United States has today filed its response to Hernandez's parallel motion. *See* Docket Entry 28 in Case No. 10-cv-21957-JAL. Due to the large volume of claims raised by Hernandez, the United States assigned

---

[1] "DE/cr" refers to docket entries in the underlying criminal case, 98-721-Cr-LENARD.

[2] "DE" refers to docket entries in this §2255 case, No. 10-23966-Cv-LENARD.

each claim a serial number, as set forth at Attachment One to its response, Docket Entry 28-1 in Case No. 10-cv-21957-JAL.

Movant's claims are closely drawn, many verbatim, from the Hernandez motion. Movant's claims set forth at his Addendum Stating 28 U.S.C. §2255 Claims include, under the heading "I. The movant was denied due process of law because before, during and after the indictment and trial, the government surreptitiously funded a highly inculpatory, anti-Cuba propaganda campaign in the community in which the defendants were tried," six enumerated claims. *See* DE1:14. The six claims under this heading are, nearly word for word, the same as Hernandez's Claims ##95-100, respectively.[3] Movant also has filed a Memorandum in Support of Motion to Vacate, Set Aside, or Correct Judgment and Sentence Under 28 U.S.C. §2255; *see* DE6. As to Movant's issue I., relating to payments to journalists, Movant's memorandum also is drawn nearly verbatim from the Memorandum in the Hernandez case, Docket Entry 12 in Case No. 10-cv-21957-JAL. Pages[4] 6:3-6:21 of Movant's Memorandum, DE6, setting forth his argument on issue I, are nearly word-for-word the same as pages 12:61-12:78 of Hernandez's Memorandum, Docket Entry 12 in Case No. 10-cv-21957-JAL.[5]

---

[3] The only difference is that Movant's Claim I.(A) [corresponding to Hernandez's Claim #95] includes the additional words "*government sponsored information attacking the Cuban government, including in relation to the allegations underlying this case*."

[4] All page references are to pages as assigned by the court's CM/ECF electronic file-stamping system, appearing at the upper right corner of each page. Because of tables of contents and cover pages, these do not always match the filer's pagination at the bottom of pages.

[5] Again, there are a few minute wording differences, and some added words. Movant's DE6:3 contains these italicized phrases that do not appear in Hernandez's Memorandum: " (A) the government secretly paid highly influential journalists in the trial venue — *indeed, journalists selected based on their proven effectiveness in communicating the desired message* — to deliver, in the guise of objective journalism, *a message supporting components of the government's trial*

(continued...)

Due to the mirror-like nature of Movant's claims and Hernandez's Claims as to Movant's Issue I, the United States will rely on its response in the Hernandez §2255 to serve as its response to Movant's identical claims. Accordingly, in response in opposition to Movant's issue I claim that payments to local journalists from the BBG amount to a due-process violation entitling him to a new trial, the United States incorporates by reference its arguments at pages 28:93-28:100 of Docket Entry 28 in Case No. 10-cv-21957-JAL. For the convenience of the court, the government sets out those arguments here in full:[6]

---

5(...continued)
*arguments;* . . . . (C) government-funded media published prejudicial evidence that the district court ruled was inadmissible *and addressed jury selection issues, including strategic avoidance of cause challenges;* . . . .Before trial, the movant sought a change of venue, arguing that it would be impossible to receive a fair trial in a community so saturated with persistent anti-Cuba media coverage and bias, *including as to the underlying prosecution*." Movant's page 6:4 of DE4 contains the additional italicized language, which does not appear in Hernandez's memorandum: "More than five years after their convictions, the defendants learned that . . . *the government had supported a climate in which recruitment and payment of journalists was premised on conveying the very message that the defendants had identified as prejudicial in the venue.*" Movant's page 6:6 adds the words "*including as to the specific allegations underlying the criminal case,*" and Movant's page 6:19 adds the phrase "*The government's media coverage of defendants' trial* was inflammatory, pervasive and persistent." The additional phrases do not essentially change the argument, but simply add to its conclusory, unsupported rhetorical assertions. The added reference to supposedly prejudicial evidence that addressed jury-selection issues and strategic avoidance of cause challenges is utterly unsubstantiated and unexplained; it is impossible to know what Movant refers to. Such conclusory and unspecified assertions do not state a valid §2255 claim.

[6] The references to "Movant" serve equally well as to Hernandez or as to the instant Movant, Guerrero. Where the Hernandez response references Hernandez's specific claims by number, or Hernandez's appended materials, the government inserts, in brackets, references to the respective numbering of those claims and appended material in Movant Guerrero's motion. Movant Guerrero appended to his legal Memorandum, as DE6-1 through DE6-24, the identical materials as Hernandez appended to Hernandez's legal Memorandum, as Docket Entries 12-1 through 12-24 in Case No. 10-cv-21957-JAL. Much of this appended material is irrelevant to Movant Guerrero, relating only to Count 3, in which Hernandez, but not Guerrero, was charged, or relating to Hernandez's claim of ineffective assistance of counsel. Of the appended materials, only DE6-11 through DE6-23 (corresponding to Docket Entries 12-11 through 12-23 in Case
(continued...)

**II. Movant received a fair trial, free of due-process violations, notwithstanding his claim that some local journalists received payments from the Broadcasting Board of Governors.**

Movant claims, *see* Claims ##95-100 [DE1:14 I.(A)-(F)]; *see also* DE12:61-78 [DE6:3-21], that U.S. government remuneration to south Florida journalists for services to Radio Marti and Television Marti violated his due-process rights and undermined the structure of his trial because those journalists also wrote articles about his case that he says were inflammatory and biased. Movant's contentions lack merit, and do not meet the threshold for an evidentiary hearing. He does not claim, and cannot establish, that these articles had any impact on his trial, which the Eleventh Circuit recognized as a model of procedures assuring a fair and impartial jury.

First, Movant's characterization of the remuneration to journalists as sinister and a deliberate government plot to prejudice him is overblown and without foundation. Second, the record he presents boils down to a handful of articles that were published for the most part after the jury had been empaneled and was being continually admonished not to read any accounts of the trial; there is no claim, or basis to believe, that any juror read any of the articles. Third, to the extent Movant argues that these articles, or the remuneration, added to claimed pervasive community prejudice, that issue is foreclosed by *Campa 2*, which extensively considered, and rejected, Movant's and co-defendants' claims that the case could not be fairly tried in Miami-Dade County.

Movant's claim is related to a newspaper account, and subsequent case study,[7] concerning 11 Miami journalists having received payments from the Broadcasting Board of Governors ("BBG").[8] Movant's invective about this as a

---

6(...continued)
No. 10-cv-21957-JAL)  relate to Guerrero's claims.

Due to word-processor configuration, the footnote numbering in the inserted text conforms to the footnote numbering in this pleading (instant Case No. 10-cv-23966), not the numbers in the original Hernandez pleading (Case No. 10-cv-21957).

7  Columbia Journalism School Knight Case Studies Initiative: *When the story is us: Miami Herald, Nuevo Herald and Radio Marti* (hereafter "Case Study"). Movant provides no citation. Government counsel found the case study available for download, for a small fee, at https://casestudies.jrn.columbia.edu/casestudy/www/casestudy_collection.asp?#4.

8  The BBG  "was an independent Washington, DC, agency responsible for civilian

(continued...)

vitriolic government campaign to inculpate him and his co-defendants is unfounded. The case study quotes some journalists as criticizing the ethics of journalists receiving payments from the government. However other voices, not cited by Movant, disagreed, pointing out that editors had approved some instances; disputing the ethics criticism; and noting that many payments were nominal amounts for appearing on Radio or TV Marti, similar to fees routinely paid for appearances on Voice of America, case study at 10, 13, 17-20. The payments were for work for Radio and TV Marti, which, according to Movant's Appendix H-13, "would not have been broadcast in Miami" but rather meant for the target audience in Cuba; "therefore any reporting done by these reporters was not on domestic airwaves at the time of the trial." *See* DE12-23:3 [DE6-23:3] (BBG letter).

Movant argues that all the work of the paid journalists is suspect, and references publications of theirs in Miami-area media. This argument is based on pure conjecture that these journalists were co-opted by the government to produce partisan news articles adverse to him. There is no factual basis provided for this conjecture. Indeed, the specific facts argued by Movant quickly dwindle. He cites only three of the 11 journalists – Ariel Remos, Helen Ferre and Wilfredo Cancio – as having written about his case.[9] He references a total of eight articles by these three journalists, DE12:63-65, 72-73 [DE6:5-7, 14-16](some articles are referenced twice).[10]

Although Movant argues, Claim #97 [DE1:14 I.(C)], that the material "published prejudicial evidence that the district court ruled was inadmissible," he specifies only an article by Cancio that reported, factually, a legal argument at the trial, DE12:64 [DE6:7], and, at DE12:61 [DE6:3-4], a television broadcast of a

---

8(...continued)
U.S. government and government-sponsored international broadcasting such as Voice of America, Radio Free Europe/Radio Liberty and Radio/TV Marti." Case Study at 7.

9    Although Movant speaks of hundreds of thousands of dollars in government funds, the payments to these three was considerably less, about $15,000 total paid prior to June 8, 2001, when the trial ended. *See* DE12-11 [DE6-11].

10    Movant references only one publication by Ferre, an editorial writer and therefore not writing "in the guise of objective journalism," *see* Claim #95, DE1-2:14 [DE1:14 I.(A)]. This single publication is dated February 16, 2001, according to DE12:65 [DE6:7]. This is before Ferre received any BBG payments, according to Movant's own documentation, *see* DE12-11:22-24 [DE6-11:22-24], making this publication, and Ferre, irrelevant to Movant's claim of co-optation by government payment.

BTTR video "the defendants had successfully excluded in court earlier that day," February 1, 2001. This latter broadcast is not alleged to have anything to do with the journalists who received BBG remuneration. In any event, Movant's account concerning the February 1, 2001, broadcast is fatally garbled, and undercuts his claim that the media was somehow favoring the government. The trial proceedings of February 1, 2001, addressed a media video that *[defense counsel Paul] McKenna* wanted to use, over *government* objection; McKenna was allowed to present much of the video before the jury, with some edits. *See* DE/cr1502.

The dates of the eight articles Movant complains of are significant in refuting his claims. One, by journalist Remos, appeared Nov. 28, 1999, a year before the trial began, with ample time for any effect of this article to dissipate even if there were any basis to believe that any venire member or juror saw it, which there is not. The other seven appeared between January 16, 2001, and June 4, 2001, after the jury had been empaneled, and was being admonished by the court regularly not to read any media accounts about the trial. There has never been any suggestion that that admonition was not followed. The record conclusively shows no basis to believe any of these articles reached the jury.

With nothing in the record to support a claim of any impact on his trial, Movant's due process claim fails. Movant argues that in some circumstances government action can be so egregious that no showing of specific prejudice to a criminal trial need be shown, but the cases he cites undercut his position here. That is, his cited cases all deal with some circumstance in which the criminal justice process itself is shown – not conjectured, but shown – to have been impacted, with some of these cases recognizing trial-specific circumstances so troubling that the defendant may be relieved from having to show causal prejudice. But none of the cases dispenses with an actual nexus of impact on the criminal justice process, as Movant's claim would. *See, e.g., Caperton v. A.T. Massey Coal Co., Inc.,* 129 S.Ct. 2252 (2009) (presiding judge who received campaign support from litigant should have recused); *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993) (egregiously bad jury instruction; discusses "structural defects *in the constitution of the trial mechanism*" as beyond harmless-error review [emphasis added]); *Rose v. Clark*, 478 U.S. 570 (1986)(jury instruction); *Vasquez v. Hillery*, 474 U.S. 254 (1986) (grand jury); *Smith v. Phillips*, 455 U.S. 209 (1982) allegation of juror partiality);[11] *Estes v. Texas*, 381 U.S. 532, 577

---

11   *Smith* is illuminating. The Supreme Court there *reversed* habeas relief that had been granted on the premise that a juror who had applied for a job at the prosecutor's office must be presumed biased. Reversing, the Supreme Court noted, 455 U.S. at 217, "that due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule,

(continued...)

(1965) ("carnival" atmosphere at trial, including intrusive broadcast equipment and live reporting from courtroom); *Rideau v. Louisiana*, 373 U.S. 723, 726 (1963) ("kangaroo court proceedings" where arresting sheriff staged movie of defendant confessing, broadcast pervasively in small community; three seated jurors viewed the televised confession); *Irvin v. Dowd*, 366 U.S. 717 (1961) (two thirds of seated jurors thought defendant guilty based on extra-judicial accounts); *U.S. v. Eyster*, 948 F.2d 1196 (11th Cir. 1991) (prosecutor improperly vouched for government-witness credibility). Here these is no basis to claim impact on the trial from these articles or journalists, and no basis to claim involvement of the prosecution or law enforcement in the BBG's remuneration program. As the Supreme Court has repeatedly noted, a collateral-relief petitioner must demonstrate that he was *actually* prejudiced by the matter of which he complains. *See Bousley v. U.S.*, 523 US 614, 622 (1998); *U.S. v. Frady*, 456 U.S. 152,170 (1982) (collateral-attack petitioner must show actual prejudice, not merely "a *possibility* of prejudice, but that [the errors] worked to his *actual* and substantial disadvantage;" (emphasis in original)).

Finally, these claims are but a variation on issues of claimed pervasive community prejudice, tainting the venire pool, which were massively litigated at trial and on appeal, and determined adversely to Movant. The defendants had the trial court review many newspaper articles and other publicity about this case, but did not include the articles Movant cites now. This is not due to inattention of the five energetic defense attorneys, but because the articles were obscure, only tangentially related, if at all, to this case, and did not have the inflammatory character Movant would now ascribe to them. *Campa 2* thoroughly considered, and rejected, the suggestion that prejudice should be presumed in the Miami-Dade venire, or that the steps the trial court took to ensure a fair jury selection and trial were inadequate. Specifically, *Campa 2* distinguished several of the cases Movant cites, as inapplicable to this case. *See Campa 2,* 459 F.3d at 1149-1150:

> 5. **Supreme Court Precedent**. This case was nothing like the cases in which the Supreme Court has previously found that defendants were denied a fair trial by an impartial jury because of pretrial publicity or pervasive community prejudice. The record reflects that the pretrial community atmosphere in this case was unlike that which existed in *Irvin v. Dowd*. . . . Also distinguishable from this case is *Rideau v. Louisiana*. . . .Likewise, in *Estes v. Texas* (distinguishing) . . . The rare instances in which the Supreme Court has presumed prejudice to overturn a

---

11(...continued)
few trials would be constitutionally acceptable." Yet Movant would set the bar even lower, demanding a new trial where there is no fact-specific basis to presume juror bias, as there was in *Smith*.

> defendant's conviction are far different from this case. . . . Here, the district court carefully and meticulously evaluated the defendants' evidence of pretrial publicity and then made specific factual findings to discount that evidence. At trial, the court used numerous curative measures to prevent any publicity from affecting the jury's deliberations.. . . We find that the defendants in this case failed to meet this two-pronged test. They failed to show that so great a prejudice existed against them as to require a change of venue under Rule 21, in light of the court's effective use of prophylactic measures to carefully manage individual voir dire examination of each and every panel member and its successful steps to isolate the jury from every extrinsic influence. Under these circumstances, we will not disturb the district court's broad discretion in ruling that this is not one of those rare cases in which juror prejudice can be presumed.

> The conclusions of *Campa 2* apply to these claims as well: Movant fails to make a case that his trial was subject to improper community-prejudice influence.

> . . . [*omitting discussion of argument, raised by Hernandez but not by Movant, based on anticipated ruling in Skilling v. U.S., 130 S.Ct. 2896 (2010)*] . . . There is no basis to reconsider the much-litigated change-of-venue claim. *See Campa 2*, 459 F.3d at 1154, noting that Movants and co-defendants brought their venue claim to the trial court four times, and that the appellate court would "not permit . . . the defendants to take a second – or fifth – 'bite at the apple.'" If *Campa 2* was itself the fifth bite, and the cert. petition, which also raised the change-of-venue claim, was the sixth bite, surely Movant's effort to take a seventh bite at the apple, through this §2255 motion, must be rejected.

As for Movant Guerrero's Issue II., claiming that the government failed to disclose material exculpatory evidence, *see* DE1:14-15; DE6:21-22, it is similar to, but does not track verbatim, Hernandez's claims ##78, 101-104, and arguments at Hernandez's legal Memorandum Docket Entry 12:80-81, 86. To respond to Movant Guerrero's Issue II, the government will draw upon, but paraphrase and reword, its argument on this point from the Hernandez response.

First, however, an important difference between Movant's claim and Hernandez's is that Movant makes no claim of newly discovered evidence, nor of any information about his claim that he did not have at the time of trial. Accordingly, his claim is procedurally defaulted, and

cannot be raised for the first time[12] in a §2255 motion. "[C]laims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States*, 123 S.Ct. 1690, 1693 (2003). Movant makes no effort to show cause for his default, and prejudice, as required by *United States v. Frady*, 456 U.S. 152, 170 (1982).

Movant asserts, with no specifics, no factual basis, and no description, that the United States failed to disclose material exculpatory evidence. The material is said to include, but not be limited to, materials "relating to" the spy ring's absence of an espionage role (1:14 II.(A)); high-frequency radio messages "reflecting on" Movant's lack of criminal intent (1:15 II.(B)); materials "relating to" the government's collection of high-frequency radio messages (1:15 II.(C)); and material that supposedly should have been produced pursuant to the Classified Information Procedures Act, with no description or specification of the content (1:15 II.(D), (E)). These assertions fail to state a *Brady*[13] claim, by every standard.

There are three essential elements to a *Brady* claim: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defense; (3) the evidence was material to either guilt or punishment. *Murphy v. Johnson*, 205 F.3d 809, 814 n.2 (5th Cir. 2000). *See also Strickler v. Greene,* 527 U.S. 263, 281 (1999) ("the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have

---

[12] As discussed below, part of Movant's claim – that the Classified Information Procedures Act ("CIPA") was abused to deny him discovery – was raised below, and on appeal. It, too, is procedurally defaulted. When a federal prisoner raises a claim that has been decided on direct review, he ordinarily cannot later attempt to relitigate that claim in a Section 2255 proceeding. *See Withrow v. Williams*, 507 U.S. 680, 720-721 (1993) (Scalia, J., concurring) (collecting cases); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).

[13] *Brady v. Maryland*, 373 U.S. 83 (1963).

ensued"); *Johnson v. Alabama*, 256 F.3d 1156, 1189 (11th Cir. 2001). Materiality, for *Brady* purposes, equates to prejudice: "To demonstrate prejudice, the petitioner must . . . convince us that there is a reasonable probability that the result of the trial would have been different if the [allegedly suppressed items] had been disclosed to the defense. In other words, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *High v. Head*, 209 F.3d 1257, 1267 (11th Cir.2000) (citations and internal quotation marks omitted).

*Murphy, Johnson* and *Strickler* list the elements in different order, but it matters not, for the petitioner has the burden to establish each, and if Movant fails to show any one of the three, the court need not consider the other two. *See Weeks v. Jones*, 26 F.3d 1030, 1047 (11th Cir. 1994)(habeas petitioner must demonstrate three things to establish *Brady* violation); *U.S. v. McMahon*, 715 F.2d 498, 501 (11th Cir. 1983) (*Brady* claimants must demonstrate three things) *U.S. v. Edwards*, 442 F.3d 258, 267 (5th Cir. 2006) ("parties alleging a *Brady* violation have the burden of establishing all three prongs of the *Brady* test"); *id.* at 267 n.8 (failure to show evidence suppressed, so no need to address whether evidence material); *Nelson v. Nagle*, 995 F.2d 1549, 1555 (11th Cir. 1993) ("We will not address the first two prongs of the [*Brady*] test because we find that the evidence was not material"). Indeed, that is the case here, for Movant does not and cannot establish *any* of the three essential elements. The government will address each of the three, but respectfully reminds the court that it need not consider all three; Movant's failure on any one of the elements defeats his claim.

First, Movant fails to establish that the evidence at issue was favorable or exculpatory to the defense, for the simple reason that he completely fails to identify or specify what the purported evidence is. That is, he speaks generically, and conclusorily, of material "relating to"

the spy ring's absence of an espionage role; high-frequency radio messages "reflecting on" Movant's lack of criminal intent; materials "relating to" the government's collection of high-frequency radio messages, but with no detail, particularity or attempt to describe the supposed material. He makes mere conclusory assertions, surmising that there is *Brady* material, in an approach that has been called a "shot in the dark," which does not suffice for a *Brady* claim. *See U.S. v. Navarro*, 737 F.2d 625, 632 (7th Cir. 1984). This falls far short of satisfying Movant's burden. A defendant who fails to identify "with precision" the supposed *Brady* material, and who is "unable to point to any specific evidence, exculpatory or otherwise, withheld by the government" cannot establish a *Brady* violation. *U.S. v. Warren*, 454 F.3d 752, 759 (7th Cir. 2006). *See also Murphy*, 205 F.3d at 814 (conclusory allegations cannot support *Brady* claim); *U.S. v. Davis*, 2010 WL 1857360, **1 (7th Cir. 2010) (no specification of particular evidence defendant says he should have received; "this lack of detail dooms his *Brady* claim"); *West v. Johnson*, 92 F.3d 1385, 1399 n.19 (5th Cir. 1996); *Morris v. Crosby*, 2005 WL 3468689, *16 (M.D.FL. 2005).

As to the second element, Movant fails to allege specific facts showing that the government suppressed evidence. Movant asserts that the government failed to disclose exculpatory material, including by abusing the CIPA process, but never gets past speculative generalities to show, or allege with specificity, that the government had, but suppressed, any exculpatory material. A defendant cannot demand a new trial based on mere speculation or unsupported assertions that the government suppressed evidence. *U.S. v. Jumah*, 599 F.3d 799, 809 (7th Cir. 2010). This is certainly so where the defendant additionally fails to identify with particularity the purported *Brady* material, as Movant does here; *see* discussion *supra*. *See Navarro*, 737 F.2d at 631 (unsuccessful appellant conjectures INS file *might* contain *Brady*

material, and fails to show government knows of such). It is also so even if the defendant identifies particular purported *Brady* information yet fails to show, other than by making a conclusory allegation, that the government had, but suppressed, that information. *See, e.g., Edwards*, 442 F.3d at 267 n.9 (speculative assertion that government knew of witness's book insufficient to establish *Brady* violation; §2255 petitioner's argument that government did not deny knowledge of the evidence "ignores that the [petitioners] have the burden of establishing all three prongs of the *Brady* test"); *U.S. v. Wilson*, 901 F.2d 378, 382 (4th Cir. 1990) (§2255 petitioner's *Brady* claim based on witness affidavit fails where petitioner does not show that witness told information to government). *See also Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (petitioner's burden to show evidence was withheld); *Mallet v. Miller*, 432 F.Supp. 2d 366, 377 (S.D.N.Y. 2006) ("mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief").

As to the third element, Movant fails to establish that any purportedly suppressed information was material to either guilt or punishment, that is, that there is a reasonable probability that the result of the proceeding would have been different if the allegedly suppressed information had been disclosed to the defense. Indeed, "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict," *Strickler*, 527 U.S. at 281; that it "might" have done so is not enough, *id.* at 289; *see also U.S. v. Agurs*, 427 U.S. 97, 109-110 (1976) Rather, "petitioner's burden is to establish a reasonable *probability* of a different result," *Strickler*, 527 U.S. at 291 (emphasis in original), and to establish that "'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict,'" *id.* at 290 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995));

*Stephens v. Hall*, 407 F.3d 1195, 1203 (11th Cir. 2005) . Since Movant fails to describe the supposedly exculpatory information, he necessarily also fails to show materiality.

Movant's reference to high-frequency radio messages ("HF"s) is inapt. The government placed in evidence some HFs, from the Cuban Directorate of Intelligence. They related mainly to Count 3, the Brothers to the Rescue shootdown, in which Movant was not charged. Movant fails utterly to articulate any nexus of supposedly suppressed HFs to him. The fact that the government had more HFs than it produced,[14] alluded to at 1:15 II. (E), shows nothing about their content and provides no basis for Movant's speculation that the government possessed undisclosed exculpatory HFs. His argument that the government had access to more HFs than it produced is not sufficient to infer that *Brady* material was suppressed; if it were, then the mere showing that the government has unproduced files would convert *Brady* into a broad discovery provision mandating open-file production as a constitutional requirement.  See *Kyles*, 514 U.S. at 437 ("We have never held that the constitution demands an open file policy"); *Jumah*, 599 F.3d at 809 (unsupported assertion that government suppressed evidence insufficient; *Brady* does not grant unfettered access to government files); *Stephens*, 407 F.3d at 1203; *U.S. v. Jordan*, 316 F.3d 1215, 1251-1252 (11th Cir. 2003); *Navarro*, 737 F.2d at 630-632 (mere speculation and bare allegation that unproduced government file may contain *Brady* material insufficient; "[a] due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device").

---

[14] There was testimony about this at trial, *see* DE/cr 1482, 1483. Having long known this, Movant offers no explanation, and provides no cause, for his failure to raise this claim on appeal. *See Frady*, 456 U.S. 152

The infirmity of Movant's claim is amplified here because the government files Movant targets are classified material that was thoroughly considered by the trial and appellate courts pursuant to CIPA, and as to which the Eleventh Circuit in *Campa 3* considered, and rejected, the claims Movant seeks to resurrect. His attack on the propriety and fairness of the court's handling of CIPA issues, *see* DE6:21-22 is a rehash of issues he raised unsuccessfully at trial and on appeal; *Campa 3* squarely rejected them, *see* 529 F.3d at 994-996. Movant overlooks that the CIPA material has already been considered, by the trial and appellate courts, and found not to be producible. *See, e.g.,* DE/cr1483:2683, 2687 (government-held non-disclosed HFs presented to court pursuant to CIPA). The *Campa 3* panel also sought and received the government's CIPA material to review. *See* Attachment Three to the United States' Response to Hernandez's §2255 motion, Docket Entry 28-3, Case No. 10-cv-21957 (12/20/07 letter to Movant's counsel, filed with Eleventh Circuit, confirming production to appellate court). Movant's argument, DE6:21-22, that only the defense could be trusted to review government files for discoverability[15] is contrary to CIPA and to the principle that the government ordinarily determines whether material in its possession must be turned over; *see Campa 3* at 995. Movant has no constitutional right to conduct his own search of government files to argue discoverability, *see Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).

Here, the defendants got even more protection than the prosecutor's unilateral review, because the court considered CIPA materials, and did so with great alertness to defense concerns. *See* DE/cr1483:2688 (court utilized "a very broad brush" as to producibility). Movant

---

[15]Movant also claims that he should have been included in CIPA proceedings as to evidence-admissibility. DE6:21-22. However, CIPA review is only of discoverability; no decisions as to admission of evidence are made *ex parte*. *See* DE/cr232:2 (court explains that CIPA Section 4 proceedings do not relate to determination of admissibility).

already has received more process and *in camera* review than other §2255 petitioners whose similarly speculative efforts to invade classified material were rejected. *See, e.g., Wilson*, 901 F.2d 378 (4th Cir. 1990) (affirming district court denial, without evidentiary hearing, of §2255 *Brady* claim that NSA communications intercepts must exist based on inferences, where petitioner presented no direct evidence of existence; district court also properly relied on appellate CIPA-issue affirmance as precluding collateral-attack *Brady* claims); *Comer v. U.S.*, 2009 WL 5033924, *8 (N.D.TX. 2009). *See also Davis*, 2010 WL 1857360.

Finally, Movant argues, DE6:22-24, for an evidentiary hearing and discovery. He is entitled to neither. His argument mirrors the claim of Hernandez, and the United States will rely on, and hereby incorporates by reference, its response to Hernandez, refuting his similar claim. *See* Docket Entry 28:118-122, Case No. 10-cv-21957. Movant's *Brady* claim is even more nebulous and unspecified than Hernandez's; his request for evidentiary hearing and discovery is correspondingly even weaker.

WHEREFORE, for the above-stated reasons, the United States respectfully submits that Movant's motion to vacate, set aside or correct his sentence in Case No. 98-721-Cr-LENARD(s)(s), pursuant to 28 U.S.C. §2255, should be summarily denied.

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

By:   /s/   Caroline Heck Miller
        CAROLINE HECK MILLER
        ASSISTANT U.S. ATTORNEY
        Florida Bar Number 0322369
        99 N.E. 4TH Street
        Miami, Florida 33132
        (305) 961-9432
        (305) 530-6168 (fax)
        caroline.miller@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 25, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, for uploading and service by electronic notice to counsel and parties authorized to receive electronically Notices of Electronic Filing.

       /s/   Caroline Heck Miller
      Caroline Heck Miller
      Assistant U.S. Attorney